# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **MARY MARGARET LORING,** | Case No. 6:10-CV-06273-SI |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **MICHAEL J. ASTRUE,** Commissioner of Social Security, | |
| Defendant. | |

KATHRYN TASSINARI
Drew L. Johnson P.C.
Harder, Wells, Baron & Manning P.C.
474 Willamette, Suite 200
Eugene, OR 97401

      Of Attorneys for Plaintiff

DWIGHT C. HOLTON
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902

KATHRYN A. MILLER
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

      Of Attorneys for Defendant

**SIMON, District Judge.**

Mary Margaret Loring ("Ms. Loring") brings this action under 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction under 42 U.S.C. § 405(g).

Ms. Loring suffers from chronic lower back and left leg pain. She argues that the Administrative Law Judge ("ALJ") erred by failing to provide specific, clear, and convincing reasons for rejecting her hearing testimony describing the severity of her pain. The Court agrees that the ALJ incorrectly discredited Ms. Loring's testimony. Because no other outstanding issues are left for the ALJ to resolve, the Court reverses the Commissioner's decision and remands for payment of benefits.

## I. BACKGROUND

At various times, Ms. Loring worked as a cow milker, fin clipper, and house cleaner. Tr. 152. More recently, she worked as a deli cook at a casino until September 23, 2007. Tr. 36. In October 2007, Ms. Loring applied for DIB and SSI, alleging disability since September 23, 2007. Tr. 128-40. The Commissioner denied Ms. Loring's applications, both initially and on reconsideration. Tr. 86-94, 97-103. Ms. Loring then requested a hearing, which was held before ALJ Edward H. Hein on February 9, 2010. Tr. 104, 108-12. At the time of the hearing, Ms. Loring was 44 years old. Tr. 36. The ALJ denied her claims on March 10, 2010, and the Appeals Council declined her request for review on June 22, 2010. Tr. 1-3, 10-24. When the

Appeals Council denied review, the ALJ's decision became the Commissioner's final decision. Ms. Loring then sought review in this Court.

Ms. Loring's chief alleged impairment is debilitating, chronic pain in her lower back and left leg, caused by lordosis and degenerative disc disease. Tr. 43-44, 170-72, 300-08. She also suffers from learning disabilities in math and reading and "borderline intellectual functioning." Tr. 253. To establish that she is disabled and eligible for benefits, Ms. Loring "must produce complete and detailed objective medical reports of her condition from licensed medical professionals." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir.1995); 20 C.F.R. § 404.1513(a). She may "use evidence from other sources to show the severity of [her] impairment(s) and how it affects [her] ability to work." 20 C.F.R. § 404.1513(d).

## A.    Medical Evidence of Impairment

Ms. Loring produced medical reports from Dr. Charles Bury and Dr. Andrew Kokkino. Dr. Bury, who examined Ms. Loring in 2008, recorded that Ms. Loring experienced "[c]hronic back pain probably secondary to degenerative dis[c] disease and severe obesity and lordosis." Tr. 247. He also observed poor "reasoning skills and insight" and poor math skills. Tr. 247. Dr. Kokkino examined Ms. Loring in 2009 to determine whether she would be a candidate for surgery. His assessment noted chronic back pain and left leg radiculitis, as well as "degeneration [of the] lumbar/lumbosacral disc." Tr. 324. Although he found that she did not need surgical intervention, he recommended chronic pain management. Tr. 324-25.

Ms. Loring has had two lumbar spine MRIs. The first, in 2007, revealed "[s]evere disc narrowing at T11-12 and L3-4," some "mild impingement upon the thecal sac," but no displacement of existing nerve roots, disc protrusion, or significant neural impingement. Tr. 216.

Page 3 - OPINION AND ORDER

The second, in April 2009, revealed "significant narrowing at L3-4 with ... near fusion at that level." Tr. 326. An x-ray taken in 2007 showed "discogenic narrowing at the L3-L4 level, significantly out of proportion to the appearance of the remainder of the lumbar spine." Tr. 298.

Dr. Gregory Cole performed an intellectual assessment in 2008. He reported that Ms. Loring "exhibited borderline intellectual functioning, and learning disorders in the areas of reading and mathematics." Tr. 253. She also "exhibited problems in the areas of attention and concentration," and had "average immediate and delayed memory capabilities" and "below average working memory capabilities." Tr. 253. Dr. Cole concluded that Ms. Loring's "intellectual limitations/learning disorders, and claimed pain problems, would be the primary factors" affecting her capacity for work. Tr. 253-54.

## B.     Other Evidence of Impairment

Ms. Loring also produced the records of her treating nurse practitioners, Sarah Sheffield, Terrance James, and Barbara Bryson. Those records reveal consistent and long-standing complaints of chronic pain. Tr. 231-35, 290-92, 300-08, 333-42, 362, 366. Ms. Loring reported to Sheffield that she had been experiencing back pain for more than 20 years. Tr. 366. Based on several visits with Ms. Loring, Sheffield observed that Ms. Loring "continues to be plagued with pain and discomfort issues" and that "[d]egenerative dis[c] disease persists." Tr. 354-55.

James also consistently assessed Ms. Loring with disc degeneration and chronic pain. Tr. 231-35, 290-92, 302-08. Ms. Loring reported to James that her pain was made worse "when bending, coughing, dressing, lifting, lying down, stairs, twisting and walking." Tr. 307. According to Bryson, Ms. Loring's "pain levels are pretty high," and she has "a significant amount of pain." Tr. 335, 337. More recently, Bryson wrote that Ms. Loring "has chronic back

Page 4 - OPINION AND ORDER

pain with left lower extremity radiculopathy." Tr. 327. She indicated that any sort of work involving standing or bending would cause "significant pain." Tr. 327.

During the hearing, Ms. Loring testified about the extent and severity of her symptoms. She described "burning" pain in her lower back and left leg. Tr. 43, 49. She told the ALJ that it is "like someone's taking a hot knife and shoving it in and cutting my leg open." Tr. 43. She also described pain when standing, sitting, and lying down. Tr. 43, 48-49. She indicated that she had trouble completing daily activities and hobbies, such as putting away groceries, taking walks, camping, and gardening. Tr. 51-53, 55.

When asked whether she could handle an eight-hour work day, she testified that she "could sit for 20 minutes and then get up and move around and then come back and sit for another 20 minutes and get up and move around." Tr. 56. She also testified that she would be unable to get out of bed and attend work on a significant percentage of mornings: "Some mornings I ... have a hard time getting out of bed." Tr. 70. She added that on four out of seven days she would be unable to work because of pain. Tr. 71. Ms. Loring takes or has taken a variety of prescription and over-the-counter pain medications, including naproxen, tramadol, gabapentin, Tylenol, and Celebrex. Tr. 50, 171, 308.

Ms. Loring's boyfriend, Joe Huitt, submitted a third-party function report. Tr. 181-88. He wrote that during the day, Ms. Loring "tr[ies] to get up. She has a hard time standing, she tr[ies] to clean house ... [she] tr[ies] to walk, she has a hard time." Tr. 181. He also reported that Ms. Loring has difficulty walking, sitting, and stooping and that she sometimes wakes up crying due to pain. Tr. 182. Ms. Loring's sister-in-law, Leann Baker, also testified at the hearing. Tr. 60-65. According to Baker, Ms. Loring has difficulties standing and sitting and often is unable to do

Page 5 - OPINION AND ORDER

laundry or shopping without help. Tr. 61-62. She stated that Ms. Loring's "pain, I think, has

gotten worse over time[.]" Tr. 63.

## C.    The ALJ's Decision

The ALJ applied the five-step sequential disability determination process set forth in 20

C.F.R. § 404.1520 and 20 C.F.R. § 416.920.[1] Under the five-step process, if the ALJ finds that a

claimant is or is not disabled at any particular step, the analysis concludes and a determination is

made. If, however, the ALJ cannot conclude whether the claimant is disabled at any given step,

then the ALJ proceeds to the next step. In the first four steps, the burden of proof rests upon the

claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

The first step of the five-step sequential disability determination process considers a

claimant's work activity. If a claimant is "doing substantial gainful activity," the claimant is not

disabled. 20 C.F.R. § 404.1520(a)(4)(i). The ALJ found that Ms. Loring satisfied step one.

Tr. 15.

The second step of the disability determination ascertains whether the claimant has a

severe medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At

step two, the ALJ found that Ms. Loring suffered from several severe impairments: morbid

obesity, peripheral neuropathy of the lower left extremity, lordosis and degenerative disc disease,

and borderline intellectual functioning and learning disorders. Tr. 15.

---

[1] The Commissioner promulgated separate but nearly identical rules to govern DIB and
SSI claims. The five-step process for DIB claims is set forth in 20 C.F.R. § 404.1520. The five-
step process for SSI claims is set forth in 20 C.F.R. 416.920. The processes are nearly identical.
Henceforth, citations will be solely to the DIB rules.

The third step also considers the medical severity of the impairments and asks whether

the impairments meet or equal one or more of the listings set forth in Appendix 1 to subpart P of

part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairments meet or equal one of the

listed impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*,

482 U.S. 137, 141 (1987). The ALJ found that Ms. Loring did "not have an impairment or

combination of impairments that meets or medically equals one of the listed impairments[.]"

Tr. 17.

The fourth step assesses the claimant's residual functional capacity ("RFC") and the

claimant's past relevant work. If a claimant can still perform the claimant's past relevant work,

the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ

found that Ms. Loring retained an RFC to perform "sedentary to light exertion work." Tr. 18. He

found that she could lift and carry up to 20 pounds, sit for six hours of an eight-hour workday,

and stand and walk for two hours of an eight-hour workday, for up to 20 minutes each time.

Based on this RFC, the ALJ concluded that Ms. Loring was unable to perform any past relevant

work. Tr. 22.

After developing his formulation of Ms. Loring's RFC, however, the ALJ rejected much

of Ms. Loring's testimony: "[T]he claimant's statements concerning the intensity, persistence and

limiting effects of [her pain] are not credible to the extent they are inconsistent with" the ALJ's

assessment of Ms. Loring's RFC. Tr. 20. The ALJ continued: "In terms of the claimant's alleged

back pain and left leg symptoms, the evidence [in the] record fails to establish limitations that

would keep claimant from performing full time work within the parameters of the residual

functional capacity." Tr. 20. The ALJ also discounted portions of Huitt and Baker's testimony:

Page 7 - OPINION AND ORDER

"The third party testimony and statements regarding the claimant's limitations are accepted as descriptive of their perceptions, however, they do not provide sufficient support to alter the residual functional capacity arrived at herein." Tr. 19-20. These conclusions were then used by the ALJ at the fifth step.

The fifth and final step considers the ALJ's assessment of the claimant's RFC and determines whether, in light of the claimant's age, education, and work experience, the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). At this stage of the analysis, the burden shifts to the Commissioner to establish that the claimant is capable of performing other work that exists in significant numbers in the national economy. *Terry*, 903 F.2d at 1275; 20 C.F.R. § 404.1560(c).

One way in which the ALJ may meet the step-five burden is to rely on the testimony of a vocational expert ("VE"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The "VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy." *Id.* at 1162-63; 20 C.F.R. § 404.1566.

Here, the ALJ asked a VE to identify a job or jobs that Ms. Loring could perform based on three hypothetical RFCs. Tr. 65-68, 72-75. In the first hypothetical,

> [T]he Claimant is able to lift and carry 20 pounds occasionally and 10 pounds frequently. ... [T]he Claimant could stand or walk only [two] hours out of [eight]. ... And could sit for six out of eight hours a day. ... There were also some mental limitations.... [The Claimant] is unable to do simple math calculations. Able to understand, remember, and carry out simple instructions. Can maintain attention and concentration for short simple tasks on a sustained basis. ... And has a slow pace on tasks overall.

Tr. 67. The second hypothetical was nearly identical, except that "of the two hours out of eight that she could stand, we'd have to break that up into twenty minutes at a time." Tr. 72. In addition, he added that "there would be no required bending or stooping." Tr. 72. In both of those RFCs, the ALJ did not include Ms. Loring's claimed limitation that pain often prevented her from getting out of bed and that she would miss the majority of workdays.

Based on those two hypothetical RFCs, as well as Ms. Loring's age, work history, and educational background, the VE testified that Ms. Loring could work as a surveillance systems monitor, a semi-conductor assembler, or a food and beverage order clerk. Tr. 73-74. In his final decision, the ALJ accepted the VE's testimony and concluded that Ms. Loring "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Tr. 24. Accordingly, he found her not disabled. Tr. 24.

Although the ALJ ultimately discredited Ms. Loring's testimony that was inconsistent with the first two hypothetical RFCs, during the hearing the ALJ also asked the VE to consider a third hypothetical RFC. He asked the VE what jobs Ms. Loring could perform based on her testimony that she would miss most workdays: "[T]he claimant's testifying that she thinks she would miss somewhere between two to four days a week which obviously would rule out any kind of work I presume, is that right[?]" Tr. 72. The expert answered in the affirmative. Tr. 72.

## II. STANDARD OF REVIEW

The Court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Page 9 - OPINION AND ORDER

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*,

305 U.S. 197, 229 (1938)). Where the evidence is susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d

639, 642 (9th Cir. 1982).

### III. DISCUSSION

In her complaint to the Court, Ms. Loring argues that: (1) the ALJ failed to give clear and

convincing reasons for rejecting Ms. Loring's testimony; (2) the ALJ failed to give adequate

consideration to the lay witnesses; and (3) the Commissioner did not meet his burden of proving

that Ms. Loring retains the ability to perform other work in the national economy. Pl.'s Br. 13-19.

Because the Court agrees that the ALJ failed to give clear and convincing reasons for rejecting

Ms. Loring's testimony and finds that the error is dispositive, the Court does not consider

Ms. Loring's second and third arguments.

A.    **Credibility Standards**

An ALJ is not "required to believe every allegation of disabling pain" presented by

disability claimants. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Nonetheless, "pain can

have real and severe debilitating effects," *id.* at 601, and the Ninth Circuit has made clear that an

ALJ may "not 'arbitrarily discredit a claimant's testimony regarding pain.'" *Bunnell v. Sullivan*,

947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*) (quoting *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210,

1215 (11th Cir. 1991)).

To assist the Commissioner in making determinations about the credibility of a claimant's

subjective pain testimony, the Ninth Circuit has developed a two-step analysis. *Vasquez v.*

*Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant

has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). Further, the ALJ "may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

Both the Social Security Administration and the Ninth Circuit have set forth a variety of tools that an ALJ may use to assess a claimant's credibility. In Social Security Ruling ("SSR") 96-7p,[2] the Commissioner recommended assessing the claimant's daily activities; the location,

---

[2] The Commissioner publishes rulings to clarify the Social Security Administration's regulations and policy. *See Bunnell*, 947 F.2d at 346 n.3. The Commissioner published SSR 96-7p in part "to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision."

duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms.

In addition to the factors identified in SSR 96-7p, the Ninth Circuit has suggested that an ALJ "may consider ... ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms, ... other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284.

## B.    Ms. Loring's Testimony

The ALJ found that Ms. Loring met the first step of the credibility analysis: Ms. Loring's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 20. Nevertheless, the ALJ rejected all of Ms. Loring's testimony that was inconsistent with his formulations of her RFC. In light of the ALJ's finding that Ms. Loring's impairments could reasonably be expected to cause the pain she alleged, the ALJ was required to identify the specific portions of her testimony that he discredited and to state specific, clear, and convincing reasons for rejecting that testimony. He did not.

The ALJ clearly addressed Ms. Loring's credibility in just two sentences of his 12-page opinion. The ALJ wrote:

Page 12 - OPINION AND ORDER

[T]he claimant's statements concerning the intensity, persistence and limiting effects of [pain] are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

In terms of the claimant's alleged back pain and left leg symptoms, the evidence of record fails to establish limitations that would keep the claimant from performing full time work within the parameters of the residual functional capacity. Tr. 20.

In the first sentence, the ALJ rejected Ms. Loring's testimony that was inconsistent with his RFC finding. But he did not, as the case law requires, specifically identify what portions of Ms. Loring's testimony he found inconsistent with his RFC finding. *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (ALJ must "specifically identify the testimony she or he finds not to be credible"). Nor did he provide specific, clear, and convincing reasons for discrediting the testimony.

The ALJ found that Ms. Loring's statements about her pain "are not credible" and the evidence did not establish limitations that would prevent Ms. Loring from working. In so finding, the ALJ rejected Ms. Loring's testimony that she would be unable to work on most workdays due to debilitating pain. As noted above, however, the ALJ may not discredit Ms. Loring's subjective pain testimony merely by pointing to an absence of objective medical evidence. Instead, the ALJ must "explain what evidence undermines the testimony." *Id.* Further, the "evidence upon which the ALJ relies must be substantial." *Id.*

In his brief, the Commissioner states that the ALJ "did not employ the magic words 'I find [Ms. Loring] less than credible because ….'" Def.'s Br. 8. The Commissioner adds that the ALJ nevertheless cited "reasons to find portions of [Ms. Loring's] testimony less than credible[.]" Def.'s Br. 8. The Commissioner identifies and elaborates on several examples. For instance, the Commissioner observes that notations in Dr. Kokkino's report, cited by the ALJ,

were "inconsistent with [Ms. Loring's] chronicle of severe and disabling limitation." Def.'s

Br. 8. The Commissioner also observes that the ALJ cited a report from nurse practitioner Bryson

commenting on Ms. Loring's positive response to treatment with Celebrex. The Commissioner

argues that Bryson's report "undermined the credibility of [Ms. Loring's] subjective symptom

complaints." Def.'s Br. 9.

The Court's review, however, is of the ALJ's written decision. The Commissioner's

arguments characterizing the evidence are not contained in the ALJ's decision. The Court is

"constrained to review the reasons the ALJ asserts," *Connett v. Barnhart*, 340 F.3d 871, 874

(9th Cir. 2003), and "cannot affirm the decision of an agency on a ground that the agency did not

invoke in making its decision[.]" *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001). Where,

as here, "the ALJ did not assert specific facts or reasons to reject [the claimant's] testimony" the

Court must reverse the ALJ's decision. *Connett*, 340 F.3d at 874.

Furthermore, even if the ALJ had made the arguments the Commissioner suggests, they

do not constitute substantial evidence sufficient to discredit Ms. Loring's testimony.

Dr. Kokkino's brief notation that Ms. Loring sometimes walked for exercise is unelaborated and

without context. Tr. 323. It does not state when and for how long Ms. Loring walked and, given

that Ms. Loring never claimed to be unable to walk, does not contradict her testimony. In

addition, Dr. Kokkino's observation that Ms. Loring "does not have a prominent anatomic

structure on the left side to account for" her symptoms formed the basis of his conclusion that she

"does not need surgical intervention." Tr. 324. But Dr. Kokkino did not dispute that Ms. Loring

suffers from chronic pain; in fact, he recommended that she pursue chronic pain management.

Tr. 324-25. Finally, Bryson, for her part, is clear that even though Celebrex "is helping with [Ms. Loring's] pain," Ms. Loring "does still have a significant amount of pain." Tr. 335.

Ms. Loring testified that she experienced pain so severe that she would be forced to miss a significant number of workdays. Tr. 70-71. The ALJ failed to elucidate specific, clear, and convincing reasons for rejecting that testimony. A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." *Bunnell*, 947 F.2d at 346. Thus, the Court concludes that the ALJ erred in discrediting Ms. Loring's testimony.

## C.    Remand

Generally, when reversing the Commissioner, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (quoting *INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam)). However, "in Social Security Act cases Congress has granted district courts the additional power to reverse or modify an administrative decision without remanding the case for further proceedings." *Harman v. Apfel*, 211 F.3d 1172, 1177-78 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000). An immediate award of benefits is appropriate where (1) the ALJ failed to provide legally sufficient reasons for rejecting the claimant's testimony; (2) no outstanding issues remain for the ALJ to resolve; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such testimony credited. *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004). Applying this framework, the Court concludes that remand for payment of benefits is appropriate. Here, the ALJ failed to provide legally sufficient reasons for rejecting Ms. Loring's testimony regarding the severity of her pain.

There are also no outstanding issues remaining for the ALJ to resolve. As explained above, the ALJ found that Ms. Loring met her burdens under the first four steps of the five-step disability analysis. In addition, Ms. Loring produced substantial evidence corroborating her subjective pain testimony. Medical evidence, including reports from two doctors and the results of two MRIs and an x-ray, established the existence of impairments that could reasonably be expected to cause pain. Ms. Loring consistently reported chronic pain, located in the same areas, for nearly four years. Lay testimony from her boyfriend and sister-in-law established that Ms. Loring's pain significantly limits her daily activities, such as standing, sitting, sleeping, and household chores. She takes, or has taken, under the supervision of three separate nurse practitioners, a large quantity of pain medication. In short, determination of Ms. Loring's claim does not require the development of additional evidence.

The final question is whether a finding of disability would be required had Ms. Loring's testimony been credited. In the ALJ's decision, Ms. Loring's disability status turned on the results of the fifth step of the sequential disability analysis. The ALJ concluded that Ms. Loring was not disabled because the VE testified that Ms. Loring could perform jobs in the national economy. The VE's testimony, however, was based on a hypothetical RFC that did not include Ms. Loring's testimony that she would need to miss work regularly due to debilitating pain.

The ALJ's third hypothetical question to the VE, however, was based on Ms. Loring's testimony that she would miss several workdays each week due to her pain. When the ALJ posed the third hypothetical to the VE, the VE stated that Ms. Loring would not be able to maintain any other work. Tr. 71-72. Because the third hypothetical is supported by Ms. Loring's testimony, it follows that had that testimony been credited, a finding of disability would have been required.

Page 16 - OPINION AND ORDER

*See Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1400 (9th Cir. 1988) (remanding for payment of benefits where "if [the claimant's] testimony as to her limitations were accepted as true, the vocational expert's testimony would establish that she is unable to work").

The Court is cognizant that it is a "rare circumstance in which a remand for additional investigation would be inappropriate." *Moisa*, 367 F.3d at 887. Nonetheless, where, as here, the case requires no further investigation by the Commissioner, remand for payment of benefits is appropriate. "The Commissioner, having lost this appeal, should not have another opportunity to show that [the claimant] is not credible any more than [the claimant], had [s]he lost, should have an opportunity for remand and further proceedings to establish [her] credibility." *Id.*

## IV. CONCLUSION

The Commissioner's decision is **REVERSED** and the case is **REMANDED** for payment of benefits.

IT IS SO ORDERED.

Dated this _16th_ day of September, 2011

Michael H. Simon
United States District Judge

Page 17 - OPINION AND ORDER